(No. 15096.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TIMOTHY T. MURRAY, Plaintiff in Error.

*Opinion filed February 21, 1923—Rehearing denied April 6, 1923.*

1. CRIMINAL LAW—*what reasonable doubt will authorize an acquittal.* The reasonable doubt that a jury are permitted to entertain to authorize an acquittal must arise on the whole evidence or some particular fact necessary to constitute the crime.

2. SAME—*when improper remark of State's attorney will not reverse.* An improper statement by the State's attorney during the cross-examination of the defendant is not ground for reversal where it was promptly ruled out by the court and an instruction given directing the jury to disregard any statement of counsel not based on the evidence and where the evidence so strongly supports the verdict that the jury could not have been influenced by such remark.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

FREEMAN, MASON & IGOE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with Richard Brennan, was indicted by the criminal court of Cook county under a charge of assault with intent to kill John R. Officer, a colored policeman in the city of Chicago. A separate trial was awarded and at the time of the hearing herein Brennan had not been tried. The jury returned a verdict finding plaintiff in error guilty as charged in the indictment.

It appears that plaintiff in error lived in a large apartment building, located on Fifty-fifth street, in Chicago. It is four stories in height and contains a large number of

small apartments. Plaintiff in error lived in one of the rear apartments on the second floor. On the evening of November 24, 1921, Brennan, with his family, were visiting at the home of plaintiff in error. The two families spent the evening together. Other callers were there but left in the early part of the evening. Plaintiff in error and Brennan and their families continued to visit together until about three o'clock in the morning of November 25, when Mrs. Murray served a cold lunch and coffee in the kitchen, which was at the back of the apartment and faced on the alley. The men had a pint bottle of whisky and each had three or four drinks from it, but both contended that they were not intoxicated. They, however, indulged in loud talk at frequent intervals, which attracted the attention of the complaining witness, who was traveling his beat as policeman. About four o'clock in the morning the officer went into the alley to determine the source of the noise, and seeing a light in plaintiff in error's apartment climbed the stairway at the rear of the building and rapped on the door. Plaintiff in error went to the door in response to the rap and was told by the officer that they were making too much noise and would have to cease; that the neighbors could not sleep. An argument ensued, resulting in an encounter in which the officer was shot in the back, the bullet entering from the rear over the right shoulder blade and taking a downward course, coming out under the right arm. Up to this point the testimony of witnesses both for the State and defendant agrees. It is the claim of plaintiff in error, however, that the shot was accidental; that it occurred while he and Brennan were attempting to keep the officer from using the gun.

The People's evidence concerning the occurrence consisted of the testimony of the complaining witness; of Mr. and Mrs. Chris Wahlens, who occupied the apartment adjoining that of the plaintiff in error; of Mrs. Burndgen and her daughter, Dorothy, who occupied an apartment on the fourth floor front, over the plaintiff in error; and of Mrs.

Josie Meyers, who lived on the fourth floor in the rear of the apartment occupied by Mrs. Burndgen.

The testimony of the complaining witness is to the effect that on the morning of November 25, when he warned the plaintiff in error and his friend to cease making the noise, the plaintiff in error inquired who was complaining, to which the policeman answered, "The neighbors cannot sleep." Plaintiff in error then said: "I own the building and I will make as much noise as I want to; you get off this porch; if you don't get off I will throw you off;" that after making this statement plaintiff in error sprang toward the officer; that Brennan attempted to hold him back but that he pulled loose and attacked the officer; that the latter raised his club and struck out with it, striking Murray on the shoulder; that Brennan grabbed the officer around the arms and shoulders while Murray tried to take away his gun, shouting to Brennan to get the gun; that Brennan and Murray, in getting the gun from the officer's pocket, ripped the coat along the waist-line seam; that Murray jumped onto the officer's back and put his hands over his nose and mouth, preventing his breathing; that they fell to the floor, and by the time the officer had shaken the plaintiff in error loose Brennan had gotten the officer's gun from the holster, which he gave to Murray; that Brennan and Murray then kicked and struck him and shot him as he was on his hands and knees on the porch floor; that he could not tell which one fired the shot; that after so doing they hurriedly left the premises and he went down the steps and blew his whistle for aid. Plaintiff in error and Brennan were captured that morning in the neighborhood. The officer's coat was offered in evidence and showed a bullet hole in the back, slightly to the right of the center seam and over the right shoulder blade. This hole was surrounded by powder burns. There was another hole about six inches under the right sleeve and a rip in the waist-line seam along the front left side.

Chris Wahlens, who lived in the apartment next to the plaintiff in error, testified that he heard noises in Murray's flat until about four o'clock in the morning, when he heard the officer come up the back stairs and tell them to stop making the noise; that Murray threatened to throw the officer off the porch if he did not get off. Wahlens also testified that he saw the combat; that it took place just outside his window and lasted about fifteen minutes; that Murray, with a gun in his hand, stood over the officer and shot him as the latter was crouched upon his hands and knees on the porch; that both men kicked the officer, and one said, "Let's throw him over down in the alley;" that he heard a woman's voice say, "Don't you dare throw him off; you have done enough to him;" that the woman's voice came from the apartment above that of plaintiff in error. The voice was identified by the witness as that of Mrs. Burndgen, who later testified. Mrs. Wahlens also testified to having seen the affair. She corroborated her husband as to the officer being on his hands and knees when the ·shot was fired; that the policeman did not move and she thought he was unconscious.

Mrs. Burndgen testified that during the night she heard loud noises and boisterous voices coming up from below; that she later heard loud noise and swearing, as if those below were knocking down furniture; that she called up the police and went to her back porch and leaned over and saw and heard the fight; that she again called the police by telephone; that she heard and saw the shot fired and saw Murray and Brennan striking and kicking the prostrate form of the officer; that one of them said, "Throw him over into the alley," and she called out, "Don't you dare to throw him over; you have done enough already; the wagon is coming;" that she went back and again called the police. The testimony of Dorothy Burndgen, her daughter, was substantially to the same effect.

Mrs. Josie Meyers testified that she lived on the same floor with Mrs. Burndgen, in the rear apartment; that she heard the affray; that she saw and heard the shot and saw Murray and Brennan leap over the fence and run into the alley.

John F. McNamara and William Doran, police officers, made a search for the plaintiff in error and Brennan. They went to Murray's house and found the revolver on the roof of the porch of the apartment below, directly under Murray's door.

The witnesses for the defense were plaintiff in error, Brennan and his wife. The men denied having attacked or shot the officer, stating that the shooting was accidental while the two men were attempting to prevent the officer using a gun. They do not, however, explain how it would have been possible to inflict the particular wound had the gun been in the hands of the officer.

From what has been set out it is evident that the plaintiff in error was proven guilty beyond all reasonable doubt. None of the People's witnesses, other than the complaining witness, were shown to have had any interest whatever in the case or any prejudice against plaintiff in error. Their testimony was plain and unequivocal.

Plaintiff in error contends that instruction No. 7 offered on behalf of the People was erroneous. That instruction is as follows:

"The jury are instructed that the rule requiring the jury to be satisfied of the guilt of the defendant from the evidence beyond a reasonable doubt in order to warrant a conviction is complied with if, taking the testimony altogether, the jury are satisfied beyond a reasonable doubt that the defendant is guilty. The reasonable doubt that the jury is permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence and not as to any particular fact in the case."

Plaintiff in error contends that this instruction is the same, in substance, as that held to be error in *People* v. *Mooney*, 303 Ill. 469. That instruction told the jury that it was not necessary, in order to warrant a conviction, for the People to establish each fact necessary to show the guilt beyond a reasonable doubt. It was there held erroneous for the reason that it is a fundamental requirement that all the facts necessary to constitute the crime shall be proven beyond a reasonable doubt. The instruction in the case at bar does not go to that extent. It is open to the objection that it is too general and might be misconstrued. The reasonable doubt that a jury are permitted to entertain to authorize an acquittal must arise on the whole evidence or some particular fact necessary to constitute the crime, and the instruction should have been so limited. The jury were correctly informed as to the law on that branch of the case by other instructions given, and the instruction complained of was not of a character requiring a reversal of this case.

Plaintiff in error also complains of certain remarks made by the State's attorney, in the presence of the jury, occurring during a colloquy between the State's attorney and counsel for the defense. The matter arose during the cross-examination of the plaintiff in error, when the State's attorney asked him if he did not tell the witness Mrs. Meyers to stay away from the case and threatened to kill her if she did not, following this up with the statement that was the reason she did not want to give her address in her testimony. Objection was made and sustained by the court. The State's attorney then said, "I will bring her in; that is what she told me." The court promptly sustained the objection to the statement, and later gave an instruction to the jury, at the instance of the State, telling them that if in putting in the evidence, or in argument, counsel for either party had made any statement that was not based upon the evidence the jury should wholly disregard it. The statement of the State's attorney was wrong. He had no busi-

ness to make it, and it might in a case close on the facts require reversal. This is not such a case. The evidence so strongly supports the verdict that we cannot say that the jury were in any way influenced by the statement complained of.

Some objections are raised to the admission of testimony and the refusal to require witnesses for the State to answer certain questions on cross-examination. We have examined the evidence and are of the opinion that the court did not err in ruling on the admissibility of testimony.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*